COMP
**MATTHEW Q. CALLISTER, ESQ.**
NV Bar No. 1396
mqc@call-law.com
**MITCHELL S. BISSON, ESQ.**
NV Bar No. 11920
mbisson@call-law.com
**CALLISTER & ASSOCIATES**
823 Las Vegas Blvd. S., Ste. 330
Las Vegas, Nevada 89101
T: (702)385-3344 / F: (702)385-2899
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NICOLE GROTON, individually and on behalf of all those similarly situated; ROSEANNA OAKES, individually and on behalf of all those similarly situated; MICHAEL OAKES, individually and on behalf of all those similarly situated;<br><br>        Plaintiff,<br><br>v.<br><br>LUMBER LIQUIDATORS, INC., a Delaware corporation; LUMBER LIQUIDATORS LEASING, LLC, a Delaware limited liability company; LUMBER LIQUIDATORS HOLDINGS, INC., a Delaware corporation; and LUMBER LIQUIDATORS SERVICES, LLC, a Delaware limited liability company; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive;<br><br>        Defendants. | Case No.:<br><br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Vertical left margin: **CALLISTER & ASSOCIATES**

COMES NOW, Plaintiffs NICOLE GROTON, ROSEANNA OAKES, and MICHAEL OAKES, individually and on behalf of all those similarly situated, by and through their attorneys, Matthew Q. Callister, Esq. and Mitchell S. Bisson, Esq. of the law firm of CALLISTER & ASSOCIATES, and hereby files this Complaint against the above-named Defendants, and alleges and avers as follows:

## NATURE OF THE CASE

1.    This is a consumer protection and false advertising class action. Lumber Liquidators supervises and controls the manufacturing, and packages, distributes, markets and sells a variety of Chinese-manufactured laminate wood flooring materials (the "Products" or "Chinese Flooring") that it prominently advertises and warrants as fully compliant with California's strict formaldehyde emission standards promulgated by the California Air Resources Board ("CARB") and enumerated in California's Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("CARB Regulations"). Cal. Code Regs. tit. 17, §§ 93120-93120.12. Those standards have been adopted as the national standard by the Formaldehyde Standards for Composite-Wood Products Act, 15 U.S.C. § 2697.

2.    Defendants also represent and advertise that their Chinese-manufactured laminate wood flooring materials sold throughout the United States comply with the CARB Regulations.

3.    Defendants' claims that the Products comply with CARB's standards for formaldehyde emissions and "with all applicable laws, codes and regulations"

are false. As detailed herein, the Products emit formaldehyde gas at levels that exceed the strict limits set forth in the CARB Regulations. Defendants also fail to disclose the unlawful level of formaldehyde emission to consumers.

4.     Chinese-made flooring products have come under scrutiny in recent years. According to the Hardwood Plywood and Veneer Association ("HPVA"), Chinese-made flooring sold in North America is known to have higher than expected levels of formaldehyde emissions. The HPVA began testing the Chinese-made flooring and found that "the levels of formaldehyde were so high... some were two to three times over the line." Indeed, China is now the largest manufacturer of formaldehyde products and "more than 65% of the Chinese formaldehyde output is used to produce resins mainly found in wood products."

5.     In an attempt to allay safety concerns regarding its Chinese-made flooring products, Defendants uniformly claim that all of its hardwood and laminate flooring products are compliant with the California Air Resources Board's ("CARB") standards for safe formaldehyde emissions. On its website, Defendant states: "commitment to quality and safety extends to everywhere we do business. We require that all of our suppliers comply with California's advanced environmental requirements, even for products sold outside California." As described herein, the packaging for all Lumber Liquidators' Chinese-made flooring products claim that the products are compliant with California CARB formaldehyde standards.

6.     Despite assurances that its flooring products are safe and comply with California formaldehyde regulations, several reports have shown that Lumber

Liquidators' Chinese-made flooring products actually contain levels of formaldehyde that exceed the CARB standards. On March 1, 2015, 60 Minutes news aired a story dispelling Lumber Liquidators' claims that its flooring products are compliant with California formaldehyde standards. The news story was prompted by an investigation that was conducted by two environmental advocacy groups. The environmental groups purchased more than 150 boxes of Lumber Liquidators' laminate flooring at stores around California and sent the boxes to three certified labs for a series of tests. The results showed that "every single sample of Chinese-made laminate flooring from Lumber Liquidators failed to meet California formaldehyde emissions standards. Many by a large margin."

7.     The results of that investigation prompted 60 Minutes news to conduct its own independent investigation into Lumber Liquidators' Chinese-made Flooring. The 60 Minutes news team went to stores in Virginia, Florida, Texas, and New York and purchased 31 boxes of Lumber Liquidators' Chinese-made flooring. 60 Minutes sent the sample for testing at two certified labs. "It turns out of the 31 samples of Chinese-made laminate flooring, only one was compliant with formaldehyde emissions standards. Some were more than 13x over the California limit." Both of the labs told 60 Minutes that they had never seen formaldehyde levels that high.

8.     60 Minutes then sent undercover investigators with hidden cameras to the city of Changzhou, China. The investigators posed as buyers and visited three different mills that manufacture laminates and flooring on behalf of Defendant. The results of the undercover investigation were alarming:

> Employees at the mills openly admitted that they used core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price. At all three mills they also admitted falsely labeling the company's laminate flooring as CARB compliant.

9.     Lumber Liquidators' illegal behavior with respect to its manufacturing, marketing, and sale of Chinese Flooring has caused Plaintiff and the other Class members to suffer direct financial harm. Plaintiff's purchase is markedly less valuable because of its elevated level of formaldehyde. Plaintiff would have paid significantly less, if he purchased Chinese Flooring at all, had he known that the product contained elevated levels of the toxin formaldehyde.

10.     Plaintiff asserts claims individually and on behalf of the other members of the proposed Class.

<u>**PARTIES**</u>

11.     Plaintiff NICOLE GROTON ("Groton") is a resident of Clark County, Nevada. Plaintiff owns a home in Las Vegas, Nevada in which Lumber Liquidators' Chinese Flooring is installed. In or about February 2015, Groton purchased 12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate flooring from Lumber Liquidators and personally installed it in her home with the occupants of the home, Plaintiffs Roseanna Oakes and Michael Oakes.

12.     Plaintiffs ROSEANNA OAKES and MICHAEL OAKES (the "Oakes") are residents of Clark County, Nevada and occupants of the property in which the Chinese Flooring is installed. The Oakes personally installed the Chinese Flooring with the help of Groton and a neighbor.

13.     Defendant Lumber Liquidators, Inc. is a corporation organized under the State of Delaware's Corporation Law with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168. Defendant Lumber Liquidators, Inc. markets, advertises, distributes and sells the Products to consumers throughout Oklahoma and the United States.

14.     Defendant Lumber Liquidators Leasing, LLC, is a Delaware Limited Liability Company with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

15.     Defendant Lumber Liquidators Holdings, Inc., is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23618.

16.     Defendant Lumber Liquidators Services, LLC, is a Delaware Limited Liaiblity Company with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

## JURISDICTION AND VENUE

17.     The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the class reside in states other than the state in which Defendants reside.

18.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiffs are residents of Nevada and Defendants are Delaware

Corporations that maintain their principal place of business in Virginia. The amount in controversy in this action exceeds the sum or value of $75,000.

19.    This Court has personal jurisdiction over Defendants because they conduct business in Nevada and otherwise intentionally avail themselves of the markets in Nevada to render the exercise of jurisdiction by this Court proper. Defendants have marketed, promoted, distributed, and sold the Products in Nevada and throughout the United States.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiffs reside in this District and Lumber Liquidators markets, promotes, distributes and sells the Products in this District.

<u>FACTUAL ALLEGATIONS</u>

**A.    Lumber Liquidators**

21.    Lumber Liquidators is one of the largest specialty retailers of hardwood flooring in the United States, with over 300 retail stores in 46 states. Lumber Liquidators sells primarily to homeowners directly or to contractors acting on behalf of homeowners. Consumers may also purchase the Company's products online, and any purchases made over the Internet are shipped to the Lumber Liquidators retail location of the customers choosing.

22.    Lumber Liquidators prides itself on having one of the largest inventories of prefinished and unfinished hardwood floors in the industry. Lumber Liquidators carries solid and engineered hardwood, laminate flooring, bamboo

flooring, cork flooring and resilient vinyl flooring, butcher blocks, molding, accessories, and tools.

23.     Lumber Liquidators represents that it negotiates directly with the lumber mills, eliminating the middleman and passing the savings on to its customers. As detailed herein, one of the primary reasons Lumber Liquidators has grown so quickly and its profits have surged has been through the Company's misrepresentations about the formaldehyde levels of its products.

**B.     Formaldehyde in Wood Flooring**

24.     Formaldehyde is a colorless, and strong smelling gas. According to the Occupational Safety and Health Administration ("OSHA"), formaldehyde is "commonly used a preservative in medical laboratories and mortuaries, formaldehyde is also found in many products such as chemicals particle board, household products, glues, permanent press fabrics, paper product coatings, fiberboard, and plywood." At high exposure levels, "formaldehyde is a sensitizing agent that can cause and immune system response upon initial exposure. It is also a cancer hazard." Formaldehyde exposure can be irritating to the eyes, nose, and throat and severe allergic reactions may occur in the skin, eyes, and respiratory tract.

25.     When wood flooring is manufactured, layers of wood particles are "pressed together and sealed with adhesives containing urea formaldehyde resin" ("UFR"). UFR is "highly water-soluble and therefore is the most problematic mixture for indoor air pollution."

26.     Pressed-wood products, like hardwood plywood and particleboard, are considered a major source of indoor formaldehyde emissions.

27.     All of the Lumber Liquidators Chinese-made Flooring Products contain a UFR formaldehyde or other formaldehyde resin.

C.   **CARB Regulations Regarding Formaldehyde**

28.     The California Air Resource Board, or "CARB," is a department of the California Environmental Protection Agency. CARB oversees all air pollution control efforts in California to maintain air quality standards.

29.     In January of 2009, CARB promulgated regulations called the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products. See 17 California Code of Regulations ("CCR") §§ 93120-93120.12 (the "CARB Regulations"). The CARB Regulations apply to various wood products, including wood flooring products. Phase 2 of the CARB regulations mandate that composite wood products sold in the State of California must emit no more than between 0.05 parts per million and 0.13 parts per million of formaldehyde depending on whether the product is classified as a type of hardwood plywood or medium density fiberboard.

30.     On July 7, 2010, the federal Formaldehyde Standards for Composite Wood Products Act of 2010 was signed into law by President Obama. See 15 U.S.C. § 2697.

31.     Significantly, the federal Formaldehyde Standards Act adopted the same standards established by CARB as a nationwide standard. The comment

period for the Environmental Protection Agency's proposed rules governing this statute is now closed and implementing regulations are expected to be released sometime this year.

**D.    Lumber Liquidators' Chinese-Made Composite Wood Flooring**

32.    Lumber Liquidators has distributed, marketed, and sold various laminate flooring products that are manufactured in China (the "Chinese-Made Flooring Products").

33.    Specifically, the Chinese-made Flooring Products include, but are not limited to:

a.    8 mm Bristol County Cherry Laminate Flooring;

b.    8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring;

c.    8 mm Dream Home Nirvana French Oak Laminate Flooring;

d.    12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring;

e.    12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring;

f.    12 mm Dream Home St. James Oceanside Plank Laminate Flooring;

g.    12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring;

h.    15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring;

i.    12 mm Dream Home Kensington Manor Imperial Teak Laminate Flooring;

j.    12 mm Dream Home St. James Vintner's Reserve Laminate Flooring;

k.   12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring;

l.   12 mm Dream Home St. James Golden-Acacia Laminate Flooring;

m.   12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring;

n.   12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring;

o.   12 mm Dream Home Ispiri America's Mission Olive Laminate Flooring;

p.   12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring;

q.   12 mm Dream Home Kensington Manor Summer Retreat Teak Laminate Flooring;

r.   12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring;

s.   12 mm Dream Home St. James Brazilian Koa Laminate Flooring;

t.   12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;

u.   12 mm Dream Home St. James Nantucket Beech Laminate Flooring;

v.   12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring;

w.   12 mm Dream Home St. James African Mahogany Laminate Flooring;

x.   12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring.

y.   12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring;

z.   12 mm Dream Home Kensington Manor Warm Springs Chestnut

Laminate Flooring;

aa.   15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring;

bb.   12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring;

cc.   12 mm Dream Home Kensington Manor Imperial Teak Laminate Flooring;

dd.   12 mm Dream Home St. James Cumberland Mountain Oak.

34.   The Lumber Liquidators Chinese-made Flooring Products state in a uniform manner on the packaging that they are "California 93120 Phase 2 Compliant for Formaldehyde," which indicates that the Chinese Flooring Products meet the CARB emission standards for formaldehyde. This statement is false and misleading for the reasons described herein.

35.   On the Lumber Liquidators website, Defendants also make false and misleading statement about their CARB compliance:

**Is Lumber Liquidators Compliant with the California law?**
Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

**Does CARB only apply to California?**
Though it currently applies only to products sold in California,

Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended to sell the products in California or any other state/country.

36.    In addition, the product packaging for the Products states: "CARB …Phase 2 Compliant for Formaldehyde." On information and belief, this statement is presented on all of Lumber Liquidators' Products regardless of whether the flooring inside the package complied with CARB Regulations.

37.    According to CARB, "The label seen on panels and finished goods indicates that the product meets the California Air Resources Board's (CARB) stringent emission standards for formaldehyde emissions from composite wood products, including HWPW, PB, and MDF."

38.    Lumber Liquidators' purchase orders come with a warranty from the manufacturers/packagers stating that the Products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations." These representations also are false.

39.    Lumber Liquidators' website also guarantees the "highest quality" flooring, and states (emphasis in the original):

1) INSPECTION - We inspect your flooring at every stage: before it's finished, during production, and as it's shipped. Our Quality Assurance team operates on three continents, seven countries, and in mills around the world. In fact, on a typical day, a production inspector will walk 12 miles up and down the finishing line to ensure you get only the best.

2) COMPLIANCE - We not only comply with laws - we exceed them. For example, California has the highest standards regarding laminate and engineered flooring. All of our mills that produce these products are certified by a Third Party approved

by the State of California - and we apply these standards nationwide.

3) TESTING - We are continually investing in, testing, evaluating and assuring the highest quality. Our Quality Assurance team includes certified Six Sigma professionals with Master's Degrees in Quality Management and various team members with degrees in Biology, Chemistry, Wood Science and Engineering. They work around the world to test your flooring at every stage. We also regularly send product out to an independent lab for additional testing to ensure quality.

40.     Instead of warning consumers about formaldehyde emissions from its laminate wood flooring products, Lumber Liquidators' website states that it has Third Party Certifiers approve its flooring products to meet CARB standards.

41.     Lumber Liquidators materially misrepresents the safety of its laminate wood flooring products by advertising its flooring products as compliant with the CARB limit when in fact they are not.

42.     Lumber Liquidators makes the material omission of failing to tell consumers that they are buying laminate wood flooring products with unlawfully high levels of formaldehyde.

43.     However, Lumber Liquidators does not comply with CARB regulations when selling and distributing the Chinese-made Flooring Products. Several independent tests conducted by certified laboratories reveal that the Chinese Flooring Products emit formaldehyde levels well beyond what is allowable by CARB regulations. These test results have shown that average formaldehyde exposures during testing exceeded the 0.05 to 0.11 parts per million as allowed under CARB regulations set forth in 17 CCR §§ 93120-93120.12, et seq.

44.     Lumber Liquidators' Chinese-made flooring was first called into question in June of 2013 when a blogger named Xuhua Zhou reported on the website Seeking Alpha the results of his independent investigation. Zhou sent samples of Lumber Liquidators' Flooring to be tested by independent laboratories and posted the results online.

45.     Another set of tests on Lumber Liquidators' Chinese-made flooring were conducted by the environmental advocacy groups Global Community Monitor and Sunshine Park, LLC. The two companies have filed suit in the California Superior Court for the County of Alameda against Lumber Liquidators for its alleged violation of the California Safe Drinking Water and Toxic Enforcement Act of 1986 commonly known as "Proposition 65" ("The Global Community Monitor Lawsuit.") The complaint states that the groups conducted over fifty tests using various test methods and two different laboratory locations. Test results showed average exposures of formaldehyde at the time of testing exceeded 4,000 micrograms per day ("ug/day") over 100 times above the 40 ug/day threshold established by California's Proposition 65.

46.     In accordance with California Health and Safety Code Section 25249.6, an attorney representing Global Community Monitor submitted a Certificate of Merit certifying that he consulted with persons who have the relevant and appropriate experience before filing suit. His consultants determined that there is a "reasonable and meritorious case for the private action" against Lumber Liquidators based on its sales of Chinese-made Flooring Products. The Global

Community Monitor Lawsuit seeks injunctive relief and civil penalties as allowed by Proposition 65.

47.    The most recent investigation into Lumber Liquidators flooring was conducted by 60 Minutes News. 60 Minutes purchased 31 boxes of Chinese-made Flooring Products form Lumber Liquidators stores in five different states and sent samples to two certified labs for testing. Out of the 31 samples, only one was found to be compliant with CARB formaldehyde emissions standards. Some were even more that 13x over the California limit.

48.    Moreover, manufacturers in China admitted on camera to 60 Minutes News that the Chinese-made Flooring Products sold by Lumber Liquidators are not complaint with CARB regulations.

49.    Plaintiff and other Class members would not have purchased the Chinese Flooring Products if they had known that the products were not compliant with CARB and that the Products emit unlawful levels of formaldehyde.

E.    **Plaintiffs' Reliance and Damages**

50.    In or about February, 2015, Plaintiff Groton purchased 12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate from Lumber Liquidators at a Lumber Liquidators store located in Las Vegas, Nevada. On information and belief, the flooring was produced at a laminate mill in China.

51.    After said purchase, Plaintiff Groton and Plaintiffs Roseanna and Michael Oakes personally installed the laminate flooring in Groton's property, which is occupied by the Oakes.

52.   At the time that Plaintiff purchased this laminate wood flooring, Lumber Liquidators falsely represented that the product was compliant with CARB formaldehyde emission standards and was defect free. At the time of the purchase, Lumber Liquidators also failed to inform Plaintiff that the laminate wood flooring product she purchased actually exceeded the CARB formaldehyde emission-limit and that formaldehyde is a chemical known to cause cancer.

53.   Plaintiff relied on Lumber Liquidators' misrepresentations/omissions regarding compliance with CARB formaldehyde emission standards when deciding to purchase the laminate wood flooring products and, as a result, paid Lumber Liquidators for a product she would not have otherwise purchased.

54.   If Lumber Liquidators' laminate wood flooring becomes CARB compliant, Plaintiff would likely purchase it in the future.

55.   Plaintiff paid for CARB compliant products, but received products that were not CARB compliant. By purchasing Products in reliance on advertising that is false, Plaintiff has suffered injury in fact and lost money as a result of the unfair business practices alleged here.

56.   Additionally, Plaintiffs and those similarly situated suffered damage to their person as a result of handling and installing the Chinese Flooring, which contains excessive amounts of Formaldehyde.

57.   Plaintiffs and those similarly situated suffered damage to their person as a result of occupying a residential or commercial property that contains the Chinese Flooring.

**F.  Tolling Of The Statute Of Limitations, Fraudulent Concealment, Equitable Tolling And Continuing Violations**

58.  Plaintiff did not discover, and could not have discovered, through the exercise of reasonable diligence, the existence of the claims sued upon herein until immediately prior to commencing this civil action.

59.  Any applicable statutes of limitation have been tolled by Defendant's affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

60.  Because of the self-concealing nature of Defendant's actions and its affirmative acts of concealment, Plaintiff asserts the tolling of any applicable statutes of limitations affecting the claims raised herein, on her behalf and on behalf of all other Class members.

61.  Defendant continues to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis by Defendant's unlawful conduct. Therefore, Plaintiffs and the Classes submit that each instance that Defendant engaged in the conduct complained of herein and each instance that a member of any Class purchased the Product constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

62.  Defendant is estopped from relying on any statute of limitations defense because of their unfair or deceptive conduct.

63.  Defendant's conduct was and is, by its nature, self-concealing. Still, Defendant, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding their illegal conduct, and actively

has foreclosed Plaintiff and the Classes from learning of their illegal, unfair, and/or deceptive acts. These affirmative acts included concealing that the Products are not CARB compliant.

64.     By reason of the foregoing, the claims of Plaintiff and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## CLASS ACTION ALLEGATIONS

65.     Plaintiffs seek relief in their individual capacities and as class representatives of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of the following Nationwide and Nevada Classes.

66.     The Nationwide Damages Class is initially defined as follows:

> All persons residing in the United States who, during the applicable statute of limitations period through the date notice is disseminated to the Class, purchased from Lumber Liquidators one or more laminate wood flooring products that were for their personal use rather than for resale or distribution, that were manufactured in China, and that were advertised as being CARB compliant.

67.     The Nationwide Injunctive Relief Only Class is initially defined as follows:

> All persons residing in the United States who, during the applicable statute of limitations period through the date notice is disseminated to the Class, purchased from Lumber Liquidators one or more laminate wood flooring products that were for their personal use rather than for resale or distribution, that were manufactured in China, and that were advertised as being CARB compliant.

68.     The <u>Nevada Purchaser Class</u> is initially defined as follows:

All persons residing in the State of Nevada who, during the applicable statute of limitations period through the date notice is disseminated to the Class, purchased from Lumber Liquidators one or more laminate wood flooring products that were for their personal use rather than for resale or distribution, that were manufactured in China, and that were advertised as being CARB compliant.

69.     The <u>Nevada Occupant Class</u> is initially defined as follows:

All persons residing in the State of Nevada who, during the applicable statute of limitations period through the date notice is disseminated to the Class, occupied a residential or commercial property that contained one or more laminate wood flooring products that were manufactured in China, purchased at Lumber Liquidators, and that were advertised as being CARB compliant.

70.     The <u>Nevada Installer Class</u> is initially defined as follows:

All persons residing in the State of Nevada who, during the applicable statute of limitations period through the date notice is disseminated to the Class, installed into a residential or commercial property one or more laminate wood flooring products that were manufactured in China, purchased at Lumber Liquidators, and that were advertised as being CARB compliant.

71.     Excluded from each of the above Classes are Defendant, including any entity in which Lumber Liquidators has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families, as well as any person who purchased the Product for the purpose of resale.

72.    Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

73.    Numerosity. Fed. R. Civ. P. 23(a)(1). Each Class is so numerous that joinder of all members is unfeasible and not practicable. While the precise number of Class members has not been determined at this time, Plaintiff is informed and believe that many thousands or millions of consumers have purchased the Products.

74.    Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to each Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Lumber Liquidators' laminate wood flooring products sold exceed the CARB limit;

b. Whether Lumber Liquidators' claim that its laminate wood flooring products comply with the CARB limit is false;

c. Whether Lumber Liquidators uniformly conveyed to the classes that the Products complied with CARB regulations;

d. Whether Lumber Liquidators failed to disclose material information regarding the emission of unlawful levels of formaldehyde from its laminate wood flooring products;

e. Whether Lumber Liquidators' representations that its laminate wood flooring products comply with the CARB limit are material, as judged by an objective standard;

f. Whether Lumber Liquidators violated the Nevada Deceptive Trade Practices Act, NRS § 598, *et seq.*

g. Whether Lumber Liquidators breached express and implied warranties;

    h.   Whether Lumber Liquidators breached an express and implied warranties;

    i.   Whether Lumber Liquidators was unjustly enriched;

    j.   The nature of the relief, including equitable relief, to which Plaintiff and the Class members are entitled.

75.    <u>Typicality.</u> Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class. Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Lumber Liquidators' unlawful conduct.

76.    <u>Adequacy of Representation.</u> Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions.

77.    <u>Superiority of Class Action.</u> Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

78.    <u>Injunctive and Declaratory Relief.</u> Fed. R. Civ. P. 23(b)(2). Lumber Liquidators' misrepresentations are uniform as to all members of the Class. Lumber Liquidators has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

### FIRST CAUSE OF ACTION
*(Breach of Express Warranty)*

79.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

80.     Lumber Liquidators warranted that its flooring was free of defects when it sold those products to Plaintiff and other Class members as described in this Complaint. Lumber Liquidators further represented that its flooring products complied with CARB and EU formaldehyde standards and all applicable laws and regulations. Plaintiff and other Class members reasonably relied upon Lumber Liquidators' representations and/or omissions.

81.     Lumber Liquidators' warranties became part of the basis of the bargain.

82.     Lumber Liquidators breached its warranties by:

    a.  Manufacturing, selling and/or distributing flooring that exceeds the CARB and EU formaldehyde standards;

    b.  Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

    c.  Refusing to honor the express warranty by refusing to properly repair or replace the defective flooring.

83.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by Plaintiff and other Class members who paid for the Products at issue.

84.     Any attempt by Defendants to disclaim its express warranties is both procedurally and substantively unconscionable, did not conform to the law and was

not conspicuous as required by law.

85.     Prior to March 15, 2015, Lumber Liquidators was on notice regarding the excessively high levels of formaldehyde in its flooring because of the numerous blog postings, consumer complaints and lawsuits asserted against Defendant, as well as the March 1, 2015 60 Minutes report.

86.     Thus, Lumber Liquidators has had actual and/or constructive notice that its express warranty were and are false and to date has taken no action to remedy its breaches of express warranty.

87.     Defendant's breaches of warranty have caused Plaintiff and Class members to suffer injuries, paying for falsely labeled products, and entering into transactions they would not have entered into for the consideration that Plaintiff and Class members paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and Class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the Products as promised and the value of the Products as delivered.

88.     As a result of the breach of these warranties, Plaintiff and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

### SECOND CAUSE OF ACTION
### *(Breach of Implied Warranty)*

89.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

90.     At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used and that the product be acceptable in trade for the product description.

91.     Defendants breached this duty by selling flooring to Plaintiff and the other members of the Class that was not merchantable.

92.     Defendants were notified that its product was not merchantable within a reasonable time after the defect manifested itself to Plaintiff and the members of the Class.

93.     Any attempt by Defendants to disclaim its express warranties is both procedurally and substantively unconscionable, did not conform to the law and was not conspicuous as required by law.

94.     As a result of the non-merchantability of Lumber Liquidators' flooring described herein, Plaintiff and other members of the Class sustained a loss or damages.

## THIRD CAUSE OF ACTION
### (Violation of the Magnuson-Moss Warranty Act)

95.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

96.     Plaintiff and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

97.     Lumber Liquidators is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

98.     Lumber Liquidators flooring purchased separate from the initial construction of the structure constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

99.     Lumber Liquidators' express warranties and written affirmations of fact regarding the nature of the flooring, including that the flooring was free from defects and was in compliance with CARB and EU formaldehyde standards and all other applicable laws and regulations, constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

100.    Lumber Liquidators breached their warranties by:

    a.  Manufacturing, selling and/or distributing flooring that exceeds the CARB formaldehyde standards;

    b.  Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

    c.  Refusing to honor the express warranty by refusing to properly repair or replace the defective flooring.

101.    Lumber Liquidators' breach of its express warranties deprived Plaintiff and the other Class members of the benefits of their bargains.

102.    Any attempt by Defendant to disclaim its express warranties is both procedurally and substantively unconscionable, did not conform to the law and was not conspicuous as required by law.

103.    As a direct and proximate result of Lumber Liquidators' breaches of its written warranties, Plaintiff and the other Class members sustained damages in an amount to be determined at trial. Lumber Liquidators' conduct damaged Plaintiff and the other Class members, who are entitled to recover damages, consequential

damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

**FOURTH CAUSE OF ACTION**
*(Negligence)*

104.    Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

105.    Lumber Liquidators were under a legal duty to exercise reasonable care to design, manufacture and distribute Chinese Flooring that would conform to all industry standards and codes.

106.    Lumber Liquidators breached its legal duty and was negligent in its design and/or manufacturer of its Chinese Flooring described herein. Lumber Liquidators' design and/or manufacture of the Chinese Flooring is inherently defective, in that the flooring emits unsafe levels of formaldehyde, causing damage to Plaintiff's and the Class Members' person and residences/structures as well as other property throughout the residences/structures.

107.    As a result of the defects described herein, Plaintiffs and Class Members' homes contain unsafe and dangerous levels of formaldehyde gas.

108.    As a result of Lumber Liquidators' practices, Plaintiffs' and the Class Members' residences contain defective and dangerous Chinese Flooring that require replacement as well as repair of damages and other property incidental thereto.

109.    Lumber Liquidators knew or, in the exercise of reasonable care, should have known that its Chinese Flooring was negligently designed and/or manufactured to allow for unsafe levels of formaldehyde emissions which will cause

damage to Plaintiffs' and Class Member's persons, wellbeing, and property and would not perform as expected by Plaintiffs, Class Members and/or a reasonable consumer.

110.   Lumber Liquidators knew or, in the exercise of reasonable care, should have known that its Chinese Flooring was negligently designed and/or manufactured.

111.   Lumber Liquidators possessed the knowledge to cure the defect in the Chinese Flooring, but it continued to sell, to market and to advertise defective Chinese Flooring.

112.   Plaintiff disclaimed any purported Limited Warranties.

113.   As a direct, proximate, reasonably probable and foreseeable consequence of Lumber Liquidators' negligent acts and/or omissions in connection with its design, manufacture and distribution of its Chinese Flooring, Plaintiffs and the Class Members have suffered and will continue to suffer loss and damage.

## FIFTH CAUSE OF ACTION
### *(Fraudulent Misrepresentation)*

114.   Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

115.   Lumber Liquidators falsely and fraudulently represented to Plaintiff and other Class members that Lumber Liquidators' products would be free from defects and fit for their customary and normal use. Lumber Liquidators also falsely and fraudulently represented to Plaintiff and other Class members that Lumber Liquidators' products complied with CARB and EU formaldehyde standards and all

applicable laws and regulations. Plaintiff and other Class members reasonably relied upon Lumber Liquidators' representations.

116.   When said representations were made by Lumber Liquidators, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

117.   These representations were made by Lumber Liquidators with the intent of defrauding and deceiving the Plaintiff, the Class members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of the Plaintiff and the Class members.

118.   At the time the aforesaid representations were made by Lumber Liquidators, Plaintiff and the Class members were unaware of the falsity of said representations and reasonably believed them to be true.

119.   In reliance upon said representations, the Plaintiff's and Class members' properties were built using Lumber Liquidators' Chinese Flooring, which were installed and used on Plaintiff's and the Class members' properties thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

120.   Lumber Liquidators knew and was aware, or should have been aware, that Lumber Liquidators' Chinese Flooring was defective and not fit for their customary and normal use.

121.   Lumber Liquidators knew, or should have known, that Lumber

Liquidators' Chinese Flooring had a potential to, could, and would cause severe damage and injury to property owners.

122.   Lumber Liquidators brought its Chinese Flooring to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff and the Class members.

123.   By reason of the foregoing, Plaintiff and the Class members suffered, and continue to suffer, financial damage and injury.

## SIXTH CAUSE OF ACTION
### *(Negligent Misrepresentation)*

124.   Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

125.   Lumber Liquidators made representations about the Chinese Flooring to Plaintiff, Class members, and their agents or predecessors, as set forth in this complaint.

126.   Those representations were false.

127.   When Lumber Liquidators made the representations, it knew they were untrue or it had a reckless disregard for whether they were true, or it should have known they were untrue.

128.   Lumber Liquidators knew that Plaintiff and other Class members were relying on the representations.

129.   In reliance upon the representations, Plaintiff and other Class Members purchased the Chinese Flooring and installed it in Plaintiff's and Class members' homes.

130.   As a direct and proximate result of Lumber Liquidators negligent misrepresentations, Plaintiff and Class members have been damaged as set forth in this Complaint.

131.   As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damage, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**SEVENTH CAUSE OF ACTION**
*(Fraudulent Omission/Conealment)*

132.   Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

133.   Lumber Liquidators knew or should have known that the Chinese Flooring was defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Lumber Liquidators nor the reasonable expectations of ordinary consumers.

134.   Lumber Liquidators fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class that the Chinese Flooring is defective.

135.   Lumber Liquidators had exclusive knowledge of the defective nature of the Chinese Flooring at the time of sale. The defect is latent and not something that Plaintiff or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

136.   Lumber Liquidators had the capacity to, and did, deceive Plaintiff and

Class members into believing that they were purchasing flooring free from defects.

137.   Lumber Liquidators undertook active and ongoing steps to conceal the defect. Plaintiff is aware of nothing in Lumber Liquidators' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Lumber Liquidators' awareness of the problem.

138.   The facts concealed and/or not disclosed by Lumber Liquidators to Plaintiff and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the flooring from their builders.

139.   Lumber Liquidators intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiff and the Class to act thereon.

140.   Plaintiff and the Class justifiably acted or relied upon the concealed and/or undisclosed facts to their detriment, as evidenced by their purchase of the Chinese Flooring.

141.   Plaintiff and Class members suffered a loss of money in an amount to be proven at trial as a result of Defendant's fraudulent concealment and nondisclosure because: (a) they would not have purchased the Chinese Flooring on the same terms if the true facts concerning the defective flooring had been known; (b) they paid a price premium due to fact that the flooring would be free from defects; and (c) the flooring did not perform as promised. Plaintiff also would have initiated this suit earlier had the defect been disclosed to him.

142.   By reason of the foregoing, Plaintiff and the Class members suffered,

and continue to suffer, financial damage and injury.

## EIGHTH CAUSE OF ACTION
### *(Violations of Nevada's Deceptive Trade Practices Act, NRS § 598, et seq.)*

143.   Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

144.   The acts, omissions, and practices of Defendant as alleged herein constituted, and continue to constitute deceptive trade practices within the meaning of NRS §§ 598.0915 and 598.0925. Plaintiffs have standing to bring this action under NRS § 598.0993 because they have suffered injury in fact and have lost money because of the Defendant's conduct.

145.   Defendant has engaged in "deceptive trade practices" by, in the course of its business or occupation, knowingly making a false representation that the Formaldehyde Flooring was compliant with the CARB Regulations for formaldehyde, when in fact it was not.

146.   Defendants' actions described herein constitute deceptive trade practices within the meaning of NRS §§ 598.0915 and 598.0925 in the Defendant has failed to disclose that the Chinese Flooring contains the defects as alleged above. Defendant's failure to disclose these defects was likely to mislead Plaintiffs and the Class into believing that the Chinese Flooring was free from defect and safe to use.

147.   As a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of Plaintiffs and the Class.

148.   The aforementioned unlawful or unfair business acts or practices conducted by Defendant has been committed in the past and continue to this day.

Defendant has failed to acknowledge the wrongful nature of its actions. Defendant has not corrected or publicly issued individual and comprehensive corrective notices to Plaintiffs and the Class or provide full restitution and disgorgement of all ill-gotten monies either acquired or retained by Defendants as a result thereof, thereby depriving Plaintiff and the Class of laminate wood flooring that does not have an unreasonable risk of harm for personal injury.

149.    Pursuant to NRS § 598.0993, Plaintiffs and the Class seek an order of this Court requiring Defendant to disgorge all ill-gotten gains and awarding Plaintiffs and the Class full restitution of all monies wrongfully acquired by Defendant by means of such deceptive conduct, so as to restore any and all monies to Plaintiffs and the Class and the general public, which were acquired and obtained by means of such deceptive conduct, and which ill-gotten gains are still retained by Defendant. Plaintiffs and the Class additionally request that such funds be impounded by the Court or that an asset freeze or constructive trust be imposed upon such monies by Defendant. Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

B.   Ordering Defendants to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiff and the other members of the Class and Subclasses;

C.   Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other members of these Classes;

D.   Ordering Defendants to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiff and the other members of these Classes;

E.   Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

F.   Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

G.   Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

H.   Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint that are so triable.

DATED this 16th day of March, 2015.

Respectfully submitted,

**CALLISTER & ASSOCIATES**

 /s/  Mitchell S. Bisson, Esq.
**MATTHEW Q. CALLISTER, ESQ.**
NV Bar No. 1396
**MITCHELL S. BISSON, ESQ.**
NV Bar No. 11920
823 Las Vegas Blvd. S., Ste. 330
Las Vegas, Nevada 89101
*Attorneys for Plaintiffs*